May it please the court, my name is Thad Geyer from Medford, Oregon, attorney for the appellant. On page 20 of the appellant's brief, I think that we've set forth what the doctrinal problem of this case is, because it's a doctrinal problem that affects the whole abstention doctrine, I believe, across the United States. But according to Green v. City of Tucson, this court, Ninth Circuit, 2001, certainly within the Ninth Circuit. And what the court stated in Green v. City of Tucson is, quote, As is often the case with such attempts to create analytic aids to deciding complex issues, however, these standards have not always captured all the relevant factors, and thus may have obscured rather than clarified the path to proper judicial decision-making. In commenting on the application of abstention doctrine, what this panel of the court essentially elaborated is that there's a problem with district courts making perfunctory pro forma decisions to abstain from cases simply by citing the relevant factors of a particular abstention doctrine, and then, as in this case, giving very little, if any, analytical analysis to the issues. I think that this is, with respect to this case, it's most obvious with respect to two of the Burford criteria. May I ask you a question? Do I understand correctly that there was an appeal to Luba, and that appeal was dismissed for the failure of the plaintiff to file a timely brief? That's correct. What is the status of the state proceedings? Is there anything pending in state court now? There's nothing pending in state court. What would there be to abstain for then? I don't quite understand what the district judge had in mind in abstaining. I don't think it's apparent from either the magistrate's decision or from the district judge's decision, but I know that Mr. Newell will be able to answer that question in a proper fashion. What is the fact that there's nothing pending, that the state process was dismissed potentially on a procedural ground? Does that pose any obstacle? I don't think it poses any obstacle. Now, the county, in its brief, says that it poses an obstacle under younger abstention. And, of course, as the court knows from reading the briefs, is neither the district court judge or the magistrate ever dealt with younger. Basically, four abstention doctrines were argued, and both the magistrate and the district judge only dealt with Burford. However, the county, in its brief, correctly points out that this court has the discretion to affirm on any available grounds, and so they're taking another opportunity to argue younger here. However, and there are some younger cases that say that you can't circumvent the younger doctrine by prematurely dismissing an action in a state court by not appealing when that would have provided you the remedies that perhaps you would want. But, again, the younger abstention doctrine simply doesn't apply because it requires direct interference. And the younger cases, even those that the county cites, say that nothing short of direct interference because of the whole genesis of younger. Younger, of course, was developed in the time to prevent Lincolns from trying to stop criminal prosecutions that were ongoing. And although it has crossed over into the civil realm, it still has a very high threshold of direct interference, and we don't see any direct interference here. Certainly, the decision on Burford, if you were to rule that the Burford abstention doctrine does not apply, then, by definition, younger could not apply because you could never reach the direct interference criteria. The two criteria that are most important from the standpoint of Burford in this case are whether or not there were complex issues that, too, were relegated to a state court administrative or court process that have a specialized expertise. If there are such complex issues, you will have to find them de novo because neither the district judge nor the magistrate even attempted to do that. It really is like the city of Tucson. It's just here's some criteria. This must implicate state land use law, and this must implicate LUBA. No further analysis. And then no analysis whatsoever as to whether LUBA had any expertise. When you are seeking a permit, that's part of your relief. You're asking that the court direct you to award a permit, which is the end result of the state land use procedure. We actually the only claim, Your Honor, in which we seek a permit is on the breach of contract claim as an alternative relief for specific performance. But we don't seek a permit per se. We seek to enforce a contract. But that is true. I'm sorry. No, go ahead. Okay. That is true, but then you have to then put it in the context of the Burford action. And what you end up asking yourself is, does LUBA have expertise in ruling on breach of contract claims? And LUBA has no jurisdiction. Doesn't the breach of contract claim involve an analysis of the LUBA procedures, whether the county can, through, I guess it's counsel, enter into some kind of an agreement that will be bonding on LUBA? To what extent the land use proceedings, I assume, permit sort of an oral agreement that replaces the land use process? Well, there's actually LUBA itself has never ruled on such an issue. But I agree with your basic premise that it certainly was seen to implicate land use law and certainly from a state policy perspective, you would want LUBA perhaps to look at an issue like that. But that's part of the problem is how abstention is applied, is that the judges, as in the Tucson case that I cited, really don't get into the analysis of it. And what they end up doing is they say, well, that implicates the state land use law, and in all fairness, probably every one of these issues in some way implicates the state land use law. But that's really not the issue. The issue is whether or not that implication is via complex issues. When you read the county's brief, you'll see the repeated use of terms such as implicates state land use law, potential possible ripples in state land use law. But the problem is that you have a party such as Ms. Winnick, who has a right to bring her federal constitutional claims to a U.S. district court. And so long as she is not bringing up issues that are of the complex type or that somehow would thwart a state system in exercising its expertise, she has a right to do exactly that. There simply are no complex issues here. There are implications. Let me ask this, for instance. It was not the Jackson County that appealed the land use decision below. It was the city, which was not a party to the settlement agreement, if there was a settlement agreement. Is there a question under the procedure, the land use procedures, of the city's right to object to an agreement between the county and the landowner? No, there is no issue. The city was well within its rights to do that. So then how could we order a permit issued if the city was objecting to it and it had not participated in the settlement? Well, although that's not an issue before the court, how could you order it? I don't know. I'm fairly skeptical about that claim myself. I mean, I took this case over at a later point in the state and really tried to replete it, which, by the way, in my final seconds, I want to point out that most of the issues that are now the subject of this proceeding were not pleaded in the first instance. So, for example, our claims about the taking and the transportation, our claims about preponderance about the burden of proof standards, refiling within one year, et cetera, all came far beyond the time when LUBA had dismissed the claim. And I think that that would thwart the younger argument completely. I'm out of time. Thank you. May it please the Court, Bob Newell, appearing for Jackson County. I think it's important to understand the context in which this case arises. This was the first case filed in the state of Oregon after Measure 7 was passed by the voters, and it was filed within days of the passage of that measure, which allowed for a takings claim to be undertaken in the event that any government action had any effect on any property owner's property, any value of that property. And the case was filed before the hearings officer had even finished the hearings in the conditional use permit process. So this was filed on November 17. The last hearing was held on November 20, and the hearings officer didn't decide the issue until some weeks after that. So the requirements for younger are clearly met. That's the second issue that we addressed in our brief. The younger doctrine requires only that the state proceeding be pending at the time of the filing of the federal case, and the other elements, I think, are not in dispute on younger. But in practical terms, certainly by now, and at least for some time, is there a state case pending to interfere with? No, there isn't. But the federal law is clear in not only the Supreme Court, but in this circuit and every other circuit, that what you measure is the date of filing. It doesn't matter what happens after the fact, because that's a matter of comedy. The federal courts have said, you don't mess with state action, and that's what we're saying here is that those requirements are all clearly met. But the trial court dealt with Burford, and likewise the elements of the Burford abstention are met here just as similarly. We set those out on page 24 of our brief, and those are that there is a significant state interest that is relegated to a specialized court, and that action by the federal court could upset that system of specialized knowledge and procedure. Here, the Land Conservation and Development Commission in the state of Oregon reviews all of the state LUBA, Court of Appeals, and Supreme Court actions to make sure that their rules and regulations are in conformity with the law. They don't review federal action. And the magistrate and the district judge specifically found that federal action in this case could significantly upset that system if it were to act in parallel track with the state system. Why shouldn't the district judge have stayed the case instead of her dismissing it? The district judge could have done that, but once the elements are found, what this court does is review for an abuse of discretion. And I think given the elements of forum shopping that were apparent that we briefed below, the district court felt that it was appropriate to require the plaintiff in this case to go through the state system where LUBA allows for the raising of constitutional claims and see what happens. I mean, the state court declared Measure 7 unconstitutional. It's clear that the state court is qualified, able, and willing to rule on those kinds of issues. Is it able to rule on a federal taking claim? I'm sorry? Is it able to rule on a federal taking claim? It is, yes. The statutory scheme specifically allows that. I assume state courts are able to rule on all federal constitutional claims. Correct. We don't really need federal courts at all to do it. Well, I wouldn't make that claim, no. No, I... I mean, the fact that the state court can rule on the federal constitutional claim, that's not enough to deprive the federal court of jurisdiction. I agree. I agree. But what would normally happen in this situation is that the plaintiff would go through the state system, preserve those claims, and ultimately have access to the federal court system. And similarly, the court could have stayed the action. But again, unless there's an element of an abuse of discretion on the part of the trial court, then it's appropriate for this court to affirm the dismissal. And the plaintiff here, to my recollection, hasn't even argued an abuse of discretion, simply that it should have been stayed because that's the appropriate course. Well, I don't think... If the state plaintiff wants to challenge the constitutionality of certain procedures, it doesn't... And besides, it doesn't want to go through the state claim. Isn't that... Isn't she allowed to do that? The challenge, for instance, is that it's unconstitutional in that it places the burden of guilt on the landowner rather than on the public entity. That may or may not have any validity. But isn't that the kind of a claim that can be asserted in federal court? It can be, but the Supreme Court said in Burford that's precisely the kind of situation where those sorts of claims are made and they are intimately tied up in the state scheme of regulation where a state has a specialized court designed to deal with those, that we have decided, we, the Supreme Court, have decided that we should defer to the state in those actions and go through that state process first before the federal court interferes in it. Well, how does a term like burden of proof, which sounds like a federal constitutional claim, but a process claim, what state land use expertise speaks to that? Well, the state Supreme Court has dealt with that specifically in the Fasano case that we addressed in our brief. You could say, for example, that the burden of proof is on the government to prove that every step they take is appropriate. The state has made a decision in the context of its land use scheme that the burden should be on the party seeking to change what the government has done. That may be right, it may be wrong, but it's a matter that has been relegated to the land use scheme and the land use court of appeals up through the Oregon appellate courts. So what about the due process challenge is assigned to the state administrative system? Now, I understand an argument that says particular land use decisions or the mechanism, that's a uniquely state decision, but to the extent there's a federal constitutional claim saying that system violates federal standards, I'm not sure I understand what the state expertise has to bring to bear there. Well, there may not be any particular on that federal claim, but where it's so tied up with the other elements that we've cited in our brief about other uses for the land, the ability of a government to enter into a contract to issue a permit and so on and so forth, one may play off against the other, and those are clearly part of the land use scheme. I think the burden of proof is as well, but certainly you can make that argument that it's a separate independent federal claim. But where the elements are met, then the federal court should abstain and await the outcome of the state proceeding before interfering in a way that might upset the state scheme. The Burford claim, there is nothing to await now. As far as what? The Burford claim. I'm not talking about the Younger. Let me decide the Younger claim for a moment. You said that with the federal constitutional claim, the due process claim, as to be able to prove we should await the outcome of the proceeding. And I said there are no proceedings to await. No, but that's the implication. That's the result of an abstention decision is that the plaintiff then, if the plaintiff wants to pursue those claims. They don't want to pursue the claims. They want to challenge the system. Well, if they want to challenge the system, the Burford court said you have to do it first through the state specialized court system. I think we're going around in a circle. Judge Clifton's question was that if this were, and you said you agreed that you might, at least in theory, you could characterize this as just a separate federal due process claim. And then you say, well, in that case, that claims fine, but wait until those state proceedings are over. And I said, no, there are no state proceedings. So aren't we then in a place, as far as the Burford claim is concerned, that that is appropriate to proceed in the due process question? It could proceed in federal court now. I don't think so until plaintiff makes the affirmative decision that they are abandoning all the other claims. If that claim stood alone, I might agree with you. But it doesn't stand alone. It has all these other claims that are intimately tied together with it. Well, they are intended to proceed in federal court on damage claims, aren't they? Not according to the Margosian claim. If the elements are met under Younger, damages claims as well as discretionary claims, injunctive relief and declaratory relief are subject to dismissal. What happens if you win this appeal and they start all over again? I mean, what happens? Well, then their alternative is to go to state court and start over. Can they come to federal court now that the state proceedings are over? I don't think so, not under Burford. No, the elements of Burford are met, and we contend that they are. They have to go to state court first. Thank you very much. We'll give you a minute or two to rebuttal, if you'd like. You know, these sort of weight cases under an administrative system, before we really know what the – we shouldn't have given you more time for this case. This is not the kind of simple question that deserves a short shift. Well, thank you very much, Your Honor. With the way abstention doctrine is going, I'm pleased to be able to walk into a federal court at all to argue for constitutional rights. You know, what the real irony of this, given the minute left, is that one of the federal claims that we filed was on this one-year wait period. At the time that we filed the second amended complaint, we still had waiting time left before the state law even allowed you to go back to court. So they basically say you lose a decision, you have to wait a whole year to be able to come back. What you really have going, and we challenge that requirement, it needs to be looked at by a federal court. The last question you asked counsel was what next, state court? State court, is it next? If you read anything in the briefs or the law, and admittedly the lower courts didn't do this, you don't go to state court. We have to go back to Jackson County, file a brand-new application, then appeal at Kaluba. What you have here is you have this abstention doctrine, as is being requested here, and as others in the past have succeeded, is we have now created a ripeness or exhaustion requirement for people to be able to file their Section 1983 civil rights claims in the courts, and I think you ought to take a real look at that. Thank you. Thank you both very much. The case will be submitted. The next case on the calendar is...
judges: Reinhardt, Silverman, Clifton